UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re KLEIMAR N.V, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 17-cv-01287 |
| | ) | |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| BENXI IRON AND STEEL | ) | |
| AMERICA, LTD. (Chicago), | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM OPINION AND ORDER

Kleimar N.V. ("Kleimar" or "Petitioner") commenced this lawsuit by filing an *ex parte* petition for discovery assistance pursuant to 28 U.S.C. § 1782(a). *See* [1]. In its petition, Kleimar requested an order authorizing the issuance of subpoenas to Benxi Iron and Steel America Ltd. (Chicago) ("Benxi") and Mega International Commerce Bank ("Mega") for the production of documents and compelling these entities to produce witnesses for deposition. *Id.*, p. 1. Kleimar represented that it intended to use the requested discovery in proceedings pending before the London Maritime Arbitration Association ("LMAA"). *Id.*, pp. 1-2. The Court granted the petition and issued an order allowing the requested discovery. *See* [10], [11]. The Order specifically provided that objections or motions directed to the subpoena and deposition notices "may be addressed pursuant to the procedures set forth in Fed. R. Civ. P. 45." [11], p. 2.

Thereafter, Benxi filed a motion to stay these proceedings pending a decision on a motion for reassignment or, alternatively, to vacate the *ex parte* order granting

discovery and to quash the subpoena. Benxi's stay request was based on a motion Benxi filed in another case pending before Judge Lee, *Kleimar N.V. v. Daliam Dongzhan Group Co., Ltd.*, Case No. 16-cv-11224, seeking to have this matter reassigned as a related case. Judge Lee denied that motion on April 6, 2017, *see id.*, 39], mooting this aspect of Benxi's motion and leaving just the motion to vacate and quash. For the reasons explained below, the motion to vacate and quash is denied.

A.  Factual Background

On February 4, 2005, Kleimar entered into a Contract of Affreightment ("COA") with Dalian Dongzhan Group Co. ("Dongzhan"). Subsequently, Kleimar claimed that Dongzhan violated the terms of the COA by failing to nominate and load cargoes and for failing to pay Kleimar for freight, demurrage, and other costs incurred on voyages performed by Kleimar under the COA. *See* [4], p. 2. Pursuant to the terms of the COA, Kleimar asserted nine claims against Dongzhan in five related arbitrations concerning Dongzhan's alleged breach of the COA. *See* Declaration of Anne C. LeVasseur [5], ¶4. The five related arbitrations are proceeding in London, England, before the London Maritime Arbitration Association ("LMAA"). *Id.*, ¶3. As part of these claims, Petitioner alleges that other parties were performing Dongzhan's obligations under the COA, without Kleimar's knowledge or consent. *Id.*, ¶¶5-6. In particular, Kleimar alleges that third parties "Benxi Beiying Iron and Steel Group Import and Export Corp. Ltd., Beigang Hong King Limited, and possibly other companies within a complex web of interrelated Chinese companies, were performing under the COA in place of Dongzhan . . . ."

2

*Id.*, ¶6. Kleimar claims that, in light of the instructions provided and payments made by third parties to the COA, "there is confusion regarding the true identity of the parties performing under the COA and Kleimar's rights to assert claims against these parties"; Kleimar argues that it needs certain discovery to "aid in clarifying the particulars of these parties and the roles they played in performing thereunder and/or assessing the breach of the COA." *Id.*, ¶9.

To that end, on February 17, 2017, Kleimar filed the *ex parte* petition for discovery. Specifically, Kleimar sought permission to serve subpoenas on Benxi and Mega seeking the production of documents; Kleimar also sought to compel these two entities to produce witnesses for deposition. *See* [1], p.1. Neither Benxi nor Mega is a party to the LMAA proceedings. *Id.*, ¶4. The proposed subpoenas sought 12 categories of documents:[1]

> 1. Any and all documents in your possession, custody or control, or practical ability to obtain, including ESI, from the years 2012 to the present day, concerning Respondent, Dongzhan.
>
> 2. All communications in your possession, custody or control, including ESI, from the years 2012 through present between Mega International Commercial Bank and Dongzhan, Benxi or Beigang.
>
> 3. Any and all documents in your possession, custody, control, or practical ability to obtain, evidencing any relationship between Dongzhan, Benxi and/or Beigang.
>
> 4. Any and all documents in your possession, custody, control, or practical ability to obtain, evidencing the officers, directors and/or employees of Dongzhan, from 2012 to the present day.

---

[1] For some reason, the document requests in the subpoena schedules are numbered such that they jump from paragraph 7 to paragraph 10, omitting paragraphs 8 and 9. *See* [1], pp. 11-12, 19-20.

3

5. Any and all documents in your possession, custody or control, or practical ability to obtain, evidencing the officers, directors and/or employees of Benxi, from 2012 to the present day.

6. Any and all documents in your possession, custody, control, or practical ability to obtain, evidencing the officers, directors and/or employees of Beigang, from 2012 to the present day.

7. To the extent not produced under any other request herein, all books, records and other documents in your possession, custody, control, or practical ability to obtain, in any way related to, or concerning, Dongzhan including, but not limited to copies of any bills of lading, charter parties, contracts of affreightment, letters of credit, and/or purchase and/or sales contracts.

10. To the extent not produced under any other request herein, all books, records and other documents in your possession, custody, control, or practical ability to obtain, in any way related to, or concerning, Benxi including, but not limited to copies of any bills of lading, charter parties, contracts of affreightment, letters of credit, and/or purchase and/or sales contracts.

11. To the extent not produced under any other request herein, all books, records and other documents in your possession, custody, control, or practical ability to obtain, in any way related to, or concerning, Beigang including, but not limited to copies of any bills of lading, charter parties, contracts of affreightment, letters of credit, and/or purchase and/or sales contracts.

12. To the extent not produced under any other request herein, all communications and related documents in your possession, custody or control by, or between Mega International Commercial Bank and any third-party relating to, referencing or concerning Dongzhan.

13. To the extent not produced under any other request herein, all communications and related documents in your possession, custody or control by, or between Mega International Commercial Bank and any third-party relating to, referencing or concerning Benxi.

14. To the extent not produced under any other request herein, all communications and related documents in your possession, custody or control by, or between [Benxi] and any third-party relating to, referencing or concerning Beigang.

The Court granted the petition and allowed the discovery. Benxi now seeks to vacate the Order allowing discovery and to quash the subpoenas, arguing that the discovery Kleimar seeks is not "for use" in the London Arbitrations and that, in any event, Benxi has no information relevant to the London Arbitrations. On this score, Benxi concedes that it has thousands of communications with one of the entities referenced in the subpoena, but argues that none of these communications relate to the arbitral respondent or the subject matter of the London Arbitrations; as a result, forcing Benxi to produce these communications—which are both voluminous and irrelevant—is burdensome and oppressive. *See* [16], pp. 2-3.

B. <u>Discussion and Analysis</u>

"Section 1782(a) of the Judicial Code authorizes federal district courts to order the production of evidentiary materials for use in foreign legal proceedings, provided the materials are not privileged." *McKevitt v. Pallasch*, 339 F.3d 530, 531 (7th Cir. 2003). The statute provides:

> [T]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not

5

> prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). The purpose of this provision is to permit a party to litigation in a foreign country to "seek discovery relating to that litigation in a federal district court, and, in the discretion of that court," to "obtain as much discovery as it could if the lawsuit had been brought in that court rather than abroad." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) (citing *Kestrel Coal Pty. Ltd. v. Joy Global, Inc.,* 362 F.3d 401, 406 (7th Cir. 2004); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP,* 376 F.3d 79, 83-84 (2d Cir. 2004); *Four Pillars Enterprises Co. v. Avery Dennison Corp.,* 308 F.3d 1075, 1078 (9th Cir. 2002)).

In determining whether to grant the *ex parte* motion under § 1782, this Court confirmed: "(1) that the person from whom discovery [was] sought resides (or [is] found) in the district of the district court to which the application is made; (2) that the discovery [was] for use in a proceeding before a foreign tribunal; and (3) that the application [was] made by a foreign or international tribunal or 'any interested person.'" *In re Ishihara Chem. Co.*, 251 F.3d 120, 124 (2d Cir. 2001) (quoting *Esses v. Hanania,* 101 F.3d 873, 875 (2d Cir. 1998)). Also relevant to this Court's decision were the following factors: (1) whether the person from whom the discovery is sought is a participant to the original proceeding; (2) whether the foreign tribunal would be receptive to U.S. federal-court assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering practices; and (4) whether the request is unduly intrusive or burdensome. *Id*. at 264-65.

Benxi now argues, notwithstanding the foregoing analysis, that the Court's order should be vacated because the requested discovery is not sought "for use" in a foreign proceeding. Alternatively, Benxi argues that the subpoenas Kleimar served should be quashed because the document requests included therein are unduly intrusive and burdensome.

1. <u>Benxi's Standing to Challenge the Subpoenas and Order</u>

Initially, Kleimar questions Benxi's standing to challenge the subpoena served on Mega, and rightly so, in light of the record here. Though Benxi clearly has standing to seek to vacate the subpoena served on it, Benxi does not have standing to challenge the subpoena served on Mega. *See, e.g., In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 520 (S.D.N.Y. 2016) ("While neither party disputes that Vale has standing to move to quash the subpoena directed at it, Vale does not have standing to challenge discovery directed at other third parties.").

Kleimar also challenges Benxi's standing to vacate the Court's prior Order. But given that Kleimar has now commenced arbitration proceedings against Benxi's affiliated entities, the Court declines to deny Benxi's motion on this ground, as there is no question that an entity against whom the discovery will be used has standing to challenge an order allowing discovery under § 1782. *E.g., Application of Sarrio, S.A.,* 119 F.3d 143, 148 (2d Cir. 1997) ("We have recognized, though implicitly, that parties against whom the requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third

7

parties."); *In re Letter of Request from Crown Prosecution Service of United Kingdom*, 870 F.2d 686, 689 (D.C. Cir. 1989) ("A person situated as Ward is, one against whom information obtained under section 1782 may be used, has standing to assert that, to his detriment, the authority for which the section provides is being abused."); *In re Request For Judicial Assistance from Seoul Dist. Criminal Court, Seoul, Korea*, 555 F.2d 720, 723 (9th Cir. 1977) ("The party against whom requested bank records are to be used has standing to challenge the validity of the order to the bank to produce the records."); *In re Letter Rogatory from Justice Court, Dist. of Montreal, Canada,* 523 F.2d 562, 564 (6th Cir. 1975) ("a party against whom the requested information is to be used has standing to challenge the validity of such a subpoena on the ground that it is in excess of the terms of the applicable statute, here 28 U.S.C. § 1782."); *In re Rivada Networks*, 230 F. Supp. 3d 467, 472 (E.D. Va. 2017) ("it is well-settled that a part[y] against whom the requested information will be used ... has standing to challenge the issuance of § 1782 subpoenas under the Rules of Civil Procedure and under the statute itself.") (internal quotation omitted).

2. The Requested Discovery is "For Use" in a Foreign Proceeding

Benxi argues that Kleimar failed to show that it seeks the requested discovery "for use" in a foreign proceeding. In fact, Benxi argues, what Kleimar is really seeking in the London Arbitrations is a default award, because Dongzhan has not appeared in those proceedings. As a result, the requested discovery is irrelevant to the only remaining issue: calculating an award, which is easily accomplished by reference to shipping contracts. Thus, Benxi argues that the information Kleimar

8

seeks here does not relate to any matter at issue in the London Arbitrations, which involve contract claims against Dongzhan, and that Kleimar's "actual purpose in seeking discovery" is to "aid in pre-award or post-award enforcement proceedings directly against" third parties like Benxi. [16], pp. 9-11.

Benxi's argument assumes that Dongzhan's failure to participate in proceedings in London alleviates Kleimar's burden of proving its claims in those proceedings. Yet Kleimar has introduced evidence showing that nothing akin to a default judgment is available in the LMAA proceedings, and that Petitioner, even unopposed, must still submit its claim and evidence, which would be evaluated by the arbitration panel on its merits. *See* Declaration of Nick J. Shepherd [26], ¶¶13-21.

Additionally, Kleimar asserts that the requested discovery is not available from another source, and Benxi has not provided any substantive evidence to dispute that contention. Benxi contends that the information Kleimar seeks is available directly from the Respondent in the arbitration proceedings, and to support the point it merely cites the declaration of Dorothy Ann Murray, a partner of KWM Europe LLP in London who was retained by Benxi to opine on English law and arbitration practice. *See* [30-8], ¶¶39-43. Murray opines that section 34(2)(d) of the Arbitration Act 1996 allows the tribunal to determine "whether any and if so which documents or classes of documents should be disclosed between and produced by the parties and at what stage." *Id*, ¶39. Yet Benxi concedes that respondents have not appeared in the London Arbitrations. And Kleimar asserts that the LMAA

9

arbitrators cannot issue subpoenas or compel witnesses to attend hearings. Shepherd Declaration [31-1], ¶5. As such, § 1782 appears to be the only way Petitioner may seek discovery on an entity not yet a party to an arbitration proceeding and not within the jurisdictional boundaries of the LMAA. Indeed, *Intel Corporation v. Advanced Micro Devices, Inc.*, contemplates just such a use of § 1782:

> First, when the person from whom discovery is sought is a participant in the foreign proceeding (as Intel is here), the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad . . . . In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel*, 542 U.S. at 264.

In short, Benxi's arguments do not alter the Court's prior conclusion that the requested discovery is "for use" in a foreign tribunal.

3. <u>The LMAA Proceeding Falls within the Scope of the Statute</u>

Benxi also argues that the LMAA is not a "foreign tribunal" for purposes of the statute. In *Intel*, the Supreme Court examined the evolution of § 1782 and explained that, with the 1964 amendments, "Congress introduced the word 'tribunal' to ensure that 'assistance is not confined to proceedings before conventional courts,' but extends also to 'administrative and quasi-judicial proceedings.'" *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 249 (2004) (quoting S.Rep. No. 1580, 88th Cong., 2d Sess., 7 (1964), U.S. Code Cong. & Admin. News 1964, pp. 3782, 3788; H.R.Rep. No. 1052, 88th Cong., 1st Sess., 9 (1963)). In *Intel,* for example, the Court held that § 1782 applied to the proceedings of the

10

Directorate-General for Competition of the Commission of the European Communities, which could investigate, impose penalties on, and assess liability of a party *sua sponte*. *Intel*, 542 U.S. at 254. *Intel* left open the question of whether § 1782 applies to private arbitration agreements.

To be sure, courts are split as to whether a purely private arbitration would fall within the scope of the statute. *Compare, e.g., In re Arbitration between Norfolk S. Corp., Norfolk S. Ry. Co., & Gen. Sec. Ins. Co. & Ace Bermuda Ltd.*, 626 F. Supp. 2d 882, 882 (N.D. Ill. 2009) (private arbitration regarding an insurance dispute did not qualify as a "foreign tribunal" for the purposes of § 1782), and *In re: the Application of TJAC Waterloo, LLC*, No. 3:16-MC-9-CAN, 2016 WL 1700001, at *1-2 (N.D. Ind. Apr. 27, 2016) (§ 1782 does not apply to a purely private arbitration arising from a construction dispute), *with In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 685 F.3d 987, 996–97 (11th Cir. 2012), *opinion vacated and superseded sub nom. Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262 (11th Cir. 2014) ("we can discern no sound reason to depart from the common sense understanding that an arbitral award is subject to judicial review when a court can enforce the award or can upset it on the basis of defects in the arbitration proceeding or in other limited circumstances. Based on the undisputed record before this Court, the arbitral panel in Ecuador, after receiving evidence from the parties, will render a first-instance binding decision on the merits that is subject to judicial review. This arbitral panel is, in the words of the Supreme Court, 'a first-

11

instance decision maker' whose judgment is subject to judicial review, and we therefore "have no warrant to exclude [it] ... from § 1782(a)'s ambit.") (quoting *Intel*, 542 U.S. at 258).

The Seventh Circuit has acknowledged the issue, but not yet ruled on it:

> And GEA must have known that Flex-N-Gate could have asked the district judge to provide evidence to "a foreign or international tribunal," as district judges are authorized to do by 28 U.S.C. § 1782; *see, e.g.*, *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 593 (7th Cir. 2011). The German panel conducting the arbitration between GEA and Flex-N-Gate might be considered such a tribunal. *See Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 685 F.3d 987, 997–98 (11th Cir.2012). (Or might not—the applicability of section 1782 to evidence sought for use in a foreign arbitration proceeding is uncertain. See S.I. Strong, "Discovery Under 28 U.S.C. § 1782: Distinguishing International Commercial Arbitration and International Investment Arbitration," 1 Stan. J. Complex Litig. 295 (2013)).

*GEA Grp. AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 419 (7th Cir. 2014).

Significantly, no court has determined that the LMAA falls outside of the statute. Indeed, all of the courts to have considered the question have determined, applying a functional analysis, that the LMAA is a foreign tribunal for purposes of § 1782. *See, e.g., In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 521-22 (S.D.N.Y. 2016) ("The Court is persuaded by the reasoning of courts that have concluded that the LMAA is a 'foreign tribunal' within the domain of Section 1782"); *In re Owl Shipping, LLC*, No. 14–5655, 2014 WL 5320192, at *2 (D.N.J. Oct. 17, 2014) ("the London Maritime Arbitrators Association . . . constitutes a foreign tribunal under Section 1782."); *In re Application of Winning (HK) Shipping Co. Ltd.*, No. 09–22659, 2010 WL 1796579, at *9–10 (S.D. Fla. Apr. 30, 2010) (same).

Moreover, in each of the cases cited here, the driving concern remains the issue of reviewability: where the tribunal's decision is judicially reviewable, courts tend to find the tribunal within the scope of the statute. Applying this functional analysis here, judicial review of the LMAA proceedings exists. Nick Shepherd, who represents Kleimar in the London Arbitrations, offered a declaration stating that the tribunal appointed pursuant to the LMAA Terms is the first instance decision maker, and that the tribunal's decision can be appealed in the English High Court of Justice, the Court of Appeal and the Supreme Court, with permission. *See* [26], ¶24. Even Benxi's expert, Dorothy Murray, concedes that the ruling of the LMAA may be appealed to English courts pursuant to the English Arbitration Act 1996. *See* [30-8], ¶¶6-22. According to Ms. Murray, arbitration awards may be appealed or challenged by contesting the basis of the tribunal's substantive jurisdiction to decide the case (section 67 of the Act), challenging the award on the basis of a serious procedural irregularity (section 68 of the Act), or challenging the award on a point of law (section 69 of the Act). *Id*. Indeed, in *Ex rel Application of Winning (HK) Shipping Co. Ltd.,* No. 09–22659–MC, 2010 WL 1796579, at *9 (S.D. Fla. Apr. 30, 2010), the court determined that, although "the London Maritime Arbitrators Association, is different from the quasi-judicial and/or agency body in *Intel*," its decisions are "reviewable by a court on both substantive and procedural grounds," making that body an international tribunal under Section 1782. This Court agrees. Because the decisions of the LMAA tribunal are judicially reviewable under English law, the tribunal constitutes a "foreign tribunal" for purposes of § 1782. The Court

13

made this determination when it granted Kleimar's petition, and nothing in Benxi's submissions alters that conclusion.

4. <u>Kleimar's Request is Neither Untimely nor Unduly Burdensome</u>

Finally, Benxi argues that Kleimar's subpoena should be quashed pursuant to Federal Rule of Civil Procedure 45(d) because it is both untimely and unduly burdensome. First, Benxi notes that Kleimar waited more than two years after initiating the London Arbitrations before seeking discovery. That fact by itself, however, does not make the subpoena untimely. There is no indication that Kleimar delayed unnecessarily in seeking the discovery, or that it had some nefarious reason for waiting. Indeed, notwithstanding Benxi's suggestion to the contrary, the London Arbitrations are ongoing and active, with new claims being recently added. In contrast to the authority Benxi cites, *e.g., In re TJAC Waterloo, LLC,* No. 3:16-mc-9-CAN, 2016 WL 1700001 (N.D. Ind. Apr. 27, 2016), no liability determination has yet been made and no default finding has been entered. In fact, as explained above, Kleimar's authority suggests that a default finding is not even possible in such proceedings.

Nor has Benxi demonstrated that Kleimar's discovery requests are unduly burdensome.[2] The scope of material obtainable pursuant to a Rule 45 subpoena is "as broad as what is otherwise permitted under Rule 26(b)(1)." *In re: Subpoena Upon Nejame Law, PA., a non-party in an action pending in the U.S. Dist. Court for*

---

[2] As the party seeking to quash the subpoena, Benxi bears the burden of proving under Rule 45(d)(3) that the subpoena subjects it to an undue burden. *See, e.g., In re: Subpoena Upon Nejame Law, PA., a non-party in an action pending in the U.S. Dist. Court for the N. Dist. of Illinois entitled First Farmers Fin. Litig.*, No. 16-CV-4619, 2016 WL 3125055, at *2 (N.D. Ill. June 3, 2016).

14

*the N. Dist. of Illinois entitled First Farmers Fin. Litig.*, No. 16-CV-4619, 2016 WL 3125055, at *2 (N.D. Ill. June 3, 2016) (citing *Chavez v. Hat World, Inc.*, No. 12-cv-5563, 2013 WL 1810137, at *2 (N.D. Ill. April. 29, 2013)). Rule 26(b)(1) allows parties to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

To be sure, the production of voluminous irrelevant discovery would be burdensome. But Benxi simply saying that the responsive documents in its possession are not relevant does not justify quashing the subpoena. And producing communications (even voluminous communications) that Benxi has already identified is not unduly burdensome.

To the extent Benxi can assert legitimate objections to specific requests, beyond the timeliness and burdensome arguments it has made here thus far, it may do so. Kleimar has expressed a willingness to narrow its discovery requests, and this Court encourages the parties to work cooperatively to narrow the discovery requests as appropriate. If the parties are unable to resolve any disputes that arise in the context of production, they may seek the Court's assistance by filing a motion.

Conclusion

For the reasons explained above, the Court affirms its findings concerning the application of 28 U.S.C. § 1782(a) and Kleimar's satisfaction of the statutory prerequisites. Benxi's motion to vacate the Court's 2/22/17 Order and to quash the subpoenas issued by Kleimar [16] is denied. Benxi's request to stay discovery here pending ruling on Benxi's motion to reassign this case to Judge Lee as a related case is denied as moot.

Dated: August 7, 2017 ENTERED:

_____
John Robert Blakey
United States District Judge